IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

ANNE ARMSTRONG, et al.,               §
                                      §
            Plaintiffs,               §
                                      §
v.                                    §                6:15-cv-294-RP
                                      §
CURVES INTERNATIONAL, INC.,           §
                                      §
            Defendant.                §

## ORDER

Pending before the Court are Defendant's Motion for Summary Judgment (Dkt. 41),

Plaintiffs' Response (Dkt. 42), and Defendant's Reply (Dkt. 45). Further, accompanying their

Response to Defendant's Motion, Plaintiffs filed an Agreed Stipulation of Partial Dismissal of

Remaining Claims (Dkt. 44). This stipulation requests that the Court dismiss Plaintiffs' claims under

the Texas Business Opportunities Act and the Texas Deceptive Trade Practices-Consumer

Protection Act. After reviewing these filings, the factual record, and the relevant case law, the Court

issues the following order.

## I. BACKGROUND

This action was initially filed in Missouri state court on June 1, 2015. (Not. of Removal, Ex.

A Part 1 at 1, Dkt. 1-1). The state petition alleged 165 counts against three defendants—Curves

International, Inc. ("Curves" or "Defendant"), Curves International Holdings, Inc., and Howard

Gary Heavin—by 111 named plaintiffs (individuals and entities) who were owners or part owners of

eighty-three different Curves franchises. (Oct. 15, 2015 Order at 1, Dkt. 18). Curves are thirty-

minute fitness and weight-loss centers, marketed specifically toward women. Generally, Plaintiffs

alleged that Defendants misrepresented information relevant to Plaintiffs' decisions to enter

franchise agreements with Curves and that Defendants later violated the franchise agreements.

Defendants removed the action to the Federal District Court for the Eastern District of Missouri on June 25, 2015. (Not. of Removal, Dkt. 1).

After removal, the district court in Missouri granted in part and denied in part Defendants' motion to dismiss based on the statute of limitations. (Oct. 15, 2015 Order at 35–36, Dkt. 18). The court grouped Plaintiffs' claims into three broad categories based on the time frames in which the relevant events allegedly occurred. (*Id.* at 2). The first category of claims were based on misrepresentations allegedly made by Defendants regarding the financial prospects of purchasing a Curves franchise and the Defendants' alleged failure to provide opening assistance as promised in the franchise agreements. (*Id.*). The second category of claims related to various demands made by Curves after the franchises opened that allegedly required additional unanticipated payments by Plaintiffs. (*Id.* at 2–3). The third category of claims consisted of alleged breaches of the franchise agreements based on Curves failure to perform its obligations to provide opening assistance, training, periodic review of franchisees' sales, ongoing support, maintenance, protected territories, and advertising. (*Id.* at 4). The claims were based on Texas common law, the Texas Business Opportunity Act ("TBOA") and the Texas Deceptive Trade Practices Act ("DTPA"). (*Id.*). After assessing the claims of each of the 83 franchises owned by Plaintiffs, the district court determined that only 23 had claims in the first category not precluded by the statute of limitations, but that 75 franchises had claims in the second and third categories not precluded by the statute of limitations. (*Id.* at 32–35). The district court dismissed the claims it determined were necessarily foreclosed by the statutes of limitations based on the pleadings, dismissing nine plaintiffs entirely because they had no remaining claims. (*Id.* at 31–32).

In addition to those claims dismissed by the Missouri district court, Plaintiffs also filed a notice of partial dismissal, dismissing 96 of their initial 165 counts without prejudice. (Oct. 15, 2015 Order at 5, Dkt. 18). These counts were primarily brought under the TBOA and DTPA. (*Id.*)

After granting in part Defendant's motion to dismiss, the Missouri District Court also granted Defendants' motion to transfer venue. Within their motion to dismiss, Defendants had argued that the claims should either be dismissed because they were not filed in Texas as required by the franchise agreements, or transferred to the United States District Court for the Western District of Texas. (*Id.* at 4). The Missouri District Court agreed that transfer was appropriate, and ordered the case transferred to the Western District of Texas. (Order to Transfer, Dkt. 19).

After the transfer, Plaintiffs filed an amended complaint in order to exclude the counts of their complaint that had been dismissed. Defendants then filed another motion for partial dismissal, requesting the Court dismiss all claims asserting a breach of the covenant of good faith and fair dealing. The motion was granted after Plaintiffs conceded that no cause of action for breach of a covenant of good faith and fair dealing exists in Texas. (Feb. 15, 2016 Order, Dkt. 34).

Finally, the parties together filed a stipulation of partial dismissal of certain claims, certain individual plaintiffs, and all claims against Defendants Howard Gary Heavin and Curves International Holdings, Inc. The Court dismissed those claims with prejudice in an order on June 20, 2016. (Jun. 20, 2016 Order, Dkt. 40).

On the following day, June 21, 2016, Defendants filed the motion for summary judgment now before the Court. Accompanying their response, Plaintiffs filed another stipulation of partial dismissal, dismissing jointly with Defendants two breach of contract claims and all remaining claims for violations of the TBOA and DTPA.[1] (Dkt. 44). Thus, the only remaining claims at issue on summary judgment are sixty-two claims by various plaintiffs for breach of contract.

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is

---

[1] This dismissal is effective without a court order pursuant to Fed. R. Civ. P. 41(A)(1)(A)(ii).

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he moving party may [also] meet its burden by simply pointing to an absence of evidence to support the nonmoving party's case." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005). Where the movant bears the burden of proof on an affirmative defense such as release or limitations, the movant "must establish beyond peradventure all of the essential elements of the defense to warrant judgment in his favor." *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 293 (5th Cir. 2010). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000).

The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view this evidence in the light most favorable to the non-movant, *Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir. 1993), and should "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

## III. DISCUSSION

Plaintiffs' only remaining claims are for breach of contract. Plaintiffs generally allege that Curves failed to provide services required of them by the franchise agreements, including opening assistance, training, periodic review, ongoing support, maintenance, protected territories, and advertising.

Curves makes four primary arguments that it is entitled to summary judgment on some or all of these claims. First, Curves argues that the language of the franchise agreements demonstrate that Curves was not obligated to perform the services expected by Plaintiff-franchisees, or that Curves had complete discretion regarding whether or not to provide those services under a "Reasonable Business Judgment" provision of the contracts. Second, Curves argues that the statute of limitations bar nearly all of Plaintiffs' claims. Third, Curves asserts that certain Plaintiffs released any claims they had against Curves when they signed release agreements. Finally, Curves complains that Plaintiffs have no viable theory of damages. The Court will address each of these arguments in turn.

### A. Curves' Discretion to Provide "Expected" Services

Curves argues that Plaintiffs cannot show it breached the franchise agreements because the agreements do not require Curves to provide the "expected" services (those named in Plaintiffs' complaint) and because the agreements provide Defendants sole discretion over certain decisions through a "Reasonable Business Judgment" provision. The Court finds that neither of these arguments warrant granting Curves summary judgment.

#### 1. Whether Curves Was Required to Provide "Expected" Services

First, Curves argues that Plaintiffs "have not cited and will be unable to direct this Court to any provision of their franchise agreements that actually requires Curves to provide the additional services or support [P]laintiffs reference in the pleadings." (Def.'s Mot. Dismiss, Dkt. 41, at 5). In

making this argument, Curves relies on Section 7 of the Franchise Agreement,[2] which generally

provides for the services Curves agrees to make available to the franchisees. Specifically, Section

7(A) provides:

> **A.** **Services Available to Franchisee.** Curves agrees to make available certain
> services to Franchisee and use reasonable efforts to provide such services in
> a manner reasonably designed for the Curves System, the content of and
> manner by which any and all services are to be delivered by Curves are within
> Curves' sole reasonable discretion and right. Such services and items may
> include the following:

(Burchfield Decl. Ex. A, Dkt. 41-1, § 7(A)). What follows is a list of nine services: (1) "access to a

reproducible copy of the standard Curves Marks," (2) "[a] pre-opening training program,"

(3) "[a]ssistance . . . during the opening period of Franchisee's Facility," (4) "[p]eriodic training

seminars," (5) "periodic review of Franchisee[]s sales . . . with suggestions as to any improvements in

the operations of Franchisee's Facility," (6) "access to the Confidential Operations Manual,"

(7) "[s]uch merchandising, marketing and advertising research data and advice as may be

developed . . . by Curves," (8) "[c]ommunication of new developments, techniques and

improvements to the Curves System," and (9) "[s]uch ongoing support as Curves deems reasonably

necessary." (*Id.* § 7(A)(1)–(9)). Some of these services—within the subsection that provides for

them—are expressly made conditional or discretionary, while others are not. (*Id.*).

 Curves argues that because the last sentence of Section 7(A) uses the discretionary term

"***may***," and because some of the items listed are also discretionary, it has the "**sole discretion** to

determine what services to perform and how to perform them." (Def.'s Mot. Summ J., Dkt. 41, at

6). Curves reasons that it therefore "lack[s] [the] contractual obligation" to perform the "expected"

---

[2] Burchfield Decl. Ex. A, Dkt. 41-1. Notably, the agreement provided by Curves and discussed throughout this order is only one of many franchise agreements that are relevant to this action. Curves acknowledges as much in submitting the Declaration of Jeff Burchfield, who states that Exhibit A of his declaration "is a true and correct copy of a *sample* form franchise agreement." (Burchfield Decl.. Dkt. 41-1, ¶ 3 (emphasis added)). Burchfield also states, however, that all other individual franchise agreements relevant to this action are substantively the same with respect to their material provisions. (*Id.*).

services under the Franchise Agreement, and summary judgment on whether it breached the Franchise Agreements by failing to provide these services is required. (*Id.*).

The Court rejects this argument for two reasons. First and most obviously, Curves fails to acknowledge that Section 7 of the Franchise Agreement is not the only clause of the agreement that provides some affirmative obligations by Curves that are named in Plaintiffs' complaint. For example, Section 9 of the Franchise Agreement provides that "Curves must provide training classes for Franchisee at a location and time designated by Curves." (Burchfield Decl. Ex. A, Dkt. 41-1, § 9(A)). The agreement further specifies the length of this initial training program—four to five days—and the topics to be covered at training. (*Id.*). Plaintiffs allege in their complaint that Curves failed to provide some of the Plaintiffs with this initial training program. (Third Am. Compl., Dkt. 24, ¶ 148). Similarly, Section 10 of the Franchise Agreement provides that "Curves will assist in developing all advertising materials." (Burchfield Decl. Ex. A, Dkt. 41-1, § 10(B)). The provision then details what expenditures the Franchisee's "Monthly Advertising Fee contributions . . . will be used" for. (*Id.*). Again, Plaintiffs make allegations that suggest a breach of this obligation in their complaint; they argue they "received minimal advertising in comparison to the millions of dollars a year that they contributed to an advertising budget" and received no ongoing support. (Third Am. Compl., Dkt. 24, ¶ 148). Notably, these provisions include mandatory language, such as "must" and "will," not discretionary language. (Burchfield Decl. Ex. A, Dkt. 41-1, §§ 9(A), 10(B)). Thus, even if Defendants were correct that Section 7 of the Franchise Agreement provides for services that are completely discretionary, other provisions of the agreement preclude the Court from granting Defendants' motion solely on the basis of the language in Section 7 of the Franchise Agreement.

Second, the Court disagrees with Curves's assertion that it has no contractual obligation under Section 7 of the Franchise Agreement. In construing the Franchise Agreement, the Court's primary concern is to ascertain the true intent of the parties as expressed by the agreement. *See*

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). "In

identifying such intent, '[the court] must examine and consider the entire writing in an effort to

harmonize and give effect to all the provisions of the contract so that none will be rendered

meaningless.'" *Id.* Further, the Franchise Agreement itself provides that "[i]f any provision of this

Agreement is capable of two constructions, one of which would render the provision void, and the

other of which would render the provision valid, then the provision has the meaning which renders

it valid." (*See* Burchfield Decl. Ex. A, Dkt. 41-1, § 22(B)).

Curves interprets Section 7(A) to make any obligation on the part of Curves to perform any

services entirely discretionary and unenforceable by Plaintiffs. But an obligation that is entirely

discretionary is no longer an obligation. Thus, the interpretation Curves ask this Court to adopt

would render Section 7(A) of the Franchise Agreement meaningless or illusory. *See Westlake*

*Petrochemicals, L.L.C. v. United Polychem, Inc.*, 688 F.3d 232, 239 (5th Cir. 2012) ("A promise is illusory

if it does not bind the promisor." (quoting *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010)). Because

Texas law and the Franchise Agreement itself require this Court to give effect to all provisions of the

agreement, *see J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) (holding that courts

should "give effect to all the provisions of the contract so that none will be rendered meaningless."),

the Court will determine if Section 7(A) is capable of an alternate construction. In order to do so,

the Court will look at the Franchise Agreement as a whole and attempt to harmonize its

interpretation of Section 7(A) with the rest of the contract.

Section 7(A) initially provides that "Curves agrees to make available certain services to

Franchisee and use reasonable efforts to provide such services in a manner reasonably designed for

the Curves System." (*See* Burchfield Decl. Ex. A, Dkt. 41-1, § 7(A)). This plain language creates an

affirmative obligation on the part of Curves "to make available certain services." (*Id.*). Further, it

places a requirement on how this obligation is to be performed—" us[ing] reasonable efforts . . . in a

manner reasonably designed for the Curves System." (*Id.*). While this same sentence then provides

that the exact content and manner of these services are within Curves' *reasonable* discretion, that

qualification does not eliminate Curves' affirmative obligation to provide "certain services . . . us[ing]

reasonable efforts . . . in a manner reasonably designed for the Curves System" (*Id.*).

This reading—that Section 7(A) creates an obligation for Curves to provide certain services

reasonably designed for the Curves system—is consistent with the contract as a whole. Section 7(A)

is arguably the primary clause within the Franchise Agreement providing for how Curves is to

impart the "Curves System" of operating Curves franchises to its franchisees. The recitals at the

beginning of the Franchise Agreement specifically contemplate that the Curves System is part of

what the franchisees are bargaining for. (*See* Burchfield Decl. Ex. A, Dkt. 41-1, at 1 ("WHEREAS,

Curves is engaged in the business of granting franchises to operate Curves Franchises using certain

standards, product specifications and operating procedures (the "Curves System"), . . . and

WHEREAS, Franchisee recognizes the value of uniformity in a system of fitness and weight loss

centers, and Franchisee further recognizes the value of Curves' knowledge and experience gained

through the operation of Curves Franchises."); *see also* § 13(A) ("Franchisee acknowledges the

uniqueness of the Curves System and that Curves is making its knowledge, know-how and expertise

available to it for the purpose of operating Franchisee's Facility.").

The list of services that follows Section 7(A) are "services and items [Curves] may include"

in the exercise of its reasonable discretion. In other words, the list is an illustration of services that

Curves possibly or probably will provide. *See Definition of May*, Merriam-Webster (2017),

https://www.merriam-webster.com/dictionary/may ("have permission to . . . used to indicate

possibility or probability"). Certainly, though, services listed in Section 7(A) that are made

mandatory elsewhere in the Franchise Agreement—specifically, the requirement to provide pre-

opening training and the requirement to make available a copy of the Confidential Operations

Manual, (*see* Burchfield Decl. Ex. A, Dkt. 41-1, at §§ 6(A), 9(A))—do not become optional merely because of their inclusion in Section 7(A). And for the rest of the services in the list, whether a failure to provide the service constitutes a breach of the agreement generally depends on whether or not the failure to do so was reasonable, given the requirement that Curves "use reasonable efforts to provide . . . services in a manner reasonably designed for the Curves System," and Curves' ability to exercise discretion to determine the "content of and manner by which any and all services are to be delivered." (*Id.* § 7(A)).

In reaching this conclusion, the Court acknowledges that Curves has broad latitude in determining the content and manner of the services it provides under Section 7(A). But simply because Curves has reasonable discretion in the content and manner of the services it has agreed to provide does not mean it can avoid providing a particular service altogether where it would be unreasonable to do so. Thus, while Section 7(A) may set a rather low bar for Curves to meet in providing services to its franchisees, there is still some bar—contrary to Curves' argument. The Court therefore denies Curves' motion for summary judgment on the basis of the language in Section 7(A) of the Franchise Agreement.

### *2. Whether Curves Had Discretion Under the Reasonable Business Judgment Clause*

In addition to arguing that Section 7(A) is entirely discretionary, Curves also argues that a contract provision entitled "Reasonable Business Judgment" allows it "discretion to provide services and support." (Def.'s Mot. Summ. J., Dkt. 41, at 7). The provision provides:

> **Reasonable Business Judgment.** Reasonable Business Judgment (as defined herein) applies in all circumstances involving or requiring Curves' approval or consent, unless provided otherwise in the Agreement. Reasonable Business Judgment means that Curves' determinations or choices will prevail, even if other alternatives are also reasonable or arguably preferable, if Curves intends to benefit or is acting in a way that could benefit the Curves System by, for example, enhancing the value of the Marks, increasing customer satisfaction, minimizing possible customer confusion as to the Marks or location, or increasing the financial strength of Curves. . . .

(Burchfield Decl. Ex. A, Dkt. 41-1, § 22(D)). The Court again disagrees with Curves' interpretation of this provision. First, the "Reasonable Business Judgment" clause specifically "applies in all circumstances involving or requiring Curves' approval or consent, unless provided otherwise in the Agreement." (*Id.*). Thus, the clause is inapplicable where an obligation is mandatory or otherwise non-discretionary under the Franchise Agreement, such as those the Court previously discussed related to initial training and advertising. (*See* Burchfield Decl. Ex. A. §§ 9(A), 10(B)).

Second, simply because the "Reasonable Business Judgment" clause provides Curves latitude in making certain decisions does not foreclose altogether the possibility that it could be held liable for its decisions. The concept of reasonable business judgment comes from the realm of corporate governance. For example, in Texas, corporate officers and directors, who owe fiduciary duties to a corporation, are protected "from liability for acts that are within the honest exercise of their business judgment and discretion." *Sneed v. Webre*, 465 S.W.3d 169, 173 (Tex. 2015). This rule does not, however, protect corporate officers and directors from all liability for breaches of their fiduciary duty, such as bad faith breaches of their duties or transactions that improperly benefit the officers. *Ritchie v. Rupe*, 443 S.W.3d 856, 876 n.47 (Tex. 2014).

Similarly, even under the "Reasonable Business Judgment" clause in the Franchise Agreement, Curves cannot act unreasonably or in a way not intended to benefit the Curves System. (*See* Burchfield Decl. Ex. A, Dkt. 41-1 § 22(D)). In other words, contrary to Curves' argument, the provision does not legally preclude Plaintiffs from proving a breach of the Franchise Agreement for decisions made within Curves' discretion. Instead, in order to prove a breach, they must prove that actions taken by Curves were unreasonable or not intended to benefit the Curves system. Here, Plaintiffs allege that Curves offered virtually no support to its franchises after they entered the Franchise Agreements. (Third Am. Compl., Dkt. 24, ¶¶ 145–153). A reasonable jury could very well conclude that these actions were unreasonable and not intended to benefit the Curves system. The

Court therefore denies Curves' motion for summary judgment on the basis of the "Reasonable Business Judgment" provision of the Franchise Agreement.

Because it finds that the Franchise Agreements did obligate Curves to provide Plaintiff-franchisees some services, and because it has determined that the Reasonable Business Judgment does not preclude liability, the Court cannot grant Curves summary judgment on this basis. Before it turns to Curves' second argument, however, the Court must address Curves' argument in its reply that because Plaintiffs failed to respond to its motion for summary judgment with evidence of breach, Curves is entitled to summary judgment.

Curves appears to misunderstand the summary judgment standard.[3] "Simply filing a summary judgment motion does not immediately compel the party opposing the motion to come forward with evidence demonstrating material issues of fact as to every element of its case." *Russ v. Int'l Paper Co.*, 943 F.2d 589, 591 (5th Cir. 1991). Instead, the moving party, Curves, has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Under Federal Rule of Civil Procedure 56, Curves may meet its burden by "citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). With respect to Curves' first argument, Curves sought to show that the Franchise Agreements themselves legally foreclosed a ruling in Plaintiffs' favor because the agreements created only a discretionary obligation (or no obligation) to

---

[3] Curves' statement of the legal standard for the review of a motion for summary judgment provided, in part:

> The moving party is entitled to summary judgment as a matter of law when the nonmoving party—which has the burden of proof—fails to make a sufficient showing on an essential element of a claim.

(Def.'s Mot. for Summ. J. at 3, Dkt. 41.) This statement appears to contradict well-settled law. *See* 10A Charles Allen Wright & Arthur Miller, Federal Practice & Procedure. § 2727 (4th ed. 2016) ("Thus, it is well-settled that the party moving for summary judgment has the burden of demonstrating that the Rule 56(a) test—'no genuine dispute as to any material fact'—is satisfied and that the movant is entitled to judgment as a matter of law.").

perform any of the "expected services." (Def.'s Mot. Summ. J., Dkt. 41, at 2–9). The Court rejected this argument, meaning Curves has failed to meet its initial burden with respect to this ground for summary judgment. Notably, while "the moving party may meet its burden by simply pointing to an absence of evidence to support the nonmoving party's case," *Boudreaux*, 402 F.3d at 544, Curves did not do so for its arguments regarding breach.[4] Thus, the Court also rejects Curves' argument that summary judgment must be granted because Plaintiffs have failed to supply evidence of breach or evidence that Curves failed to exercise reasonable business judgment. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) ("If the moving party fails to meet this initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response.").

## B. Statute of Limitations

Curves' second argument in support of its motion for summary judgment is that many of Plainitiffs' claims are precluded by the statute of limitations. Here, Plaintiffs' breach of contract claims are subject to Texas' four-year statute of limitations. *See Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citing Tex. Civ. Prac. & Rem. Code § 16.051). Curves argues that all but fifteen of the Plaintiffs' contract claims are barred by the statute of limitations because any alleged breach occurred more than four years before this case was filed. Curves acknowledges that those fifteen Plaintiffs—(1) A2D Enterprises, LLC; (2) DAR JAC, LLC; (3) Tiffany and Zachary Collins; (4) Lee Lynn Lifestyles, LLC; (5) Saintfield, LLC; (6) K & M Fitness, LLC; (7) Diva Deb, Inc.; (8) Gilpin Avenue Fitness, Inc.; (9) Bonnilee Jones; (10) Spring Kamp, LLC; (11) J & K Health, LLC;

---

[4] To the extent Curves would now argue that their general statements that Plaintiffs "simply cannot show that Curves breached their franchise agreements," (Def.'s Mot. for Summ. J. at 3–4, Dkt. 41) are sufficient to meet their burden, the Court disagrees. In the context of Defendants' initial motion, these statements were clearly intended to argue that the agreements themselves were "legally dispositive of the claims asserted," (*id.* at 1), and did not suggest that there was no evidence of breach. Without, at the least, a clear statement indicating that the party opposing summary judgment needs to come forward with evidence of a particular element of their claim, that party has no notice that they must do so, and the moving party has not met their burden. *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007) (reversing district court's grant of summary judgment where non-moving party was not on notice that it needed to produce evidence on particular issues; *see also Celotex*, 477 U.S. at 323 ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion.").

(12) FreshStart Fitness, LLC; (13) Ana Ogle; (14) SH Price Inc.; and (15) SMJJ, Inc.—started operating their clubs less than four years before they filed suit. (Def.'s Mot. to Dismiss, Dkt. 41, at 13 n.15). With respect to all of the remaining plaintiffs and claims, however, Curves argues that the evidence shows that any breach occurred more than four years before Plaintiffs filed suit.

The evidence provided by Curves includes sixteen excerpts of depositions where a franchise owner suggests that they knew from "day one" or very early in their relationship with Curves—and before the statutory cut-off date of June 1, 2011[5]—that Curves was failing to provide them the services they expected. Based on this evidence, Curves argues, the Court should grant summary judgment on the claims of *all* Plaintiffs who entered into franchise agreements with Curves before June 1, 2011.

The Court finds this argument flawed for two reasons. First, Curves does not attach any evidence related to many of the plaintiffs that entered agreements before June 1, 2011.[6] Curves appears to have done so because it argues the evidence provided is applicable to all Plaintiffs—that because some franchise owners testified that Curves' failure to comply with the agreement became apparent immediately, then all Plaintiffs must have had the same understanding. But each plaintiff has separate claims, and at summary judgment, the Court views all evidence in the light most favorable to the non-moving party—here, Plaintiffs. *Rosado v. Deters*, 5 F.3d 119, 122 (5th Cir. 1993). Thus, to the extent that one plaintiff's testimony is arguably evidence of when a breach first occurred with respect to that plaintiff's claim, the Court cannot infer that it is relevant evidence of when a breach first occurred with respect to a different plaintiff's claim. The Court therefore

---

[5] June 1, 2011 is the date after which Plaintiff's claims must have accrued, according to the Order on Defendants' motion to dismiss. (*See* Order, Oct. 15, 2015, Dkt. 18, at 32).

[6] In fact, Curves attaches evidence related to plaintiffs and claims that have long been dismissed. The first deposition excerpt attached in support of this argument is that of Susan Espy. (Wittrock Decl. Ex. B-8, Dkt. 41-2). Her claims were dismissed in October 2015 as time-barred. (Order, Oct. 15, 2015, Dkt. 18, at 32.).

concludes that to the extent that Curves has provided no evidence on its statute of limitations defense related to a particular plaintiff or claim, summary judgment must be denied.

Second, the Court finds that even with respect to the claims and plaintiffs for which Curves provided summary judgment evidence, the evidence is insufficient to warrant summary judgment. Generally, the testimony indicates that many of the plaintiffs were disappointed with Curves very soon after they entered into their franchise agreements. (*See, e.g.*, Wittrock Decl., Dkt. 41-2, Ex. B-8 ("Curves ignored me from day one."); Ex. B-9 ("And when did [Curves] first not come to your club as often as you expected?" . . . Since day one . . . ."); Ex. B-10 ("And when did you start to be harmed by what you viewed as Curves failures? . . . I would say right from the start.")). But as Curves argued elsewhere in its motion for summary judgment, just because Plaintiffs "expected" certain services under the Agreement and were disappointed with the services Curves provided them, does not mean that those services were owed under the Agreement and that its failure to deliver those services constituted a breach. Instead, a fact issue remains in this case regarding whether Curves breached the Franchise Agreements and when any such breaches occurred. "A party asserting limitations must . . . prove when the opponent's cause of action accrued." *In re Hinsley*, 201 F.3d 638, 645 (5th Cir. 2000). Because "contract claims generally accrue when the contract is breached," *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007), the evidence submitted by Curves fails to demonstrate that any breach occurred outside the period allowed by the statute of limitations. *See Addicks Servs., Inc.*, 596 F.3d at 293; *Dallas/Fort Worth Int'l Airport Bd. v. INet Airport Sys., Inc.*, 819 F.3d 245, 255 (5th Cir. 2016) ("[W]here the moving party would bear the burden of proof at trial for an affirmative defense, the party must produce evidence that 'would entitle it to a directed verdict if the evidence went uncontroverted at trial.'"). The Court will therefore deny Curves' motion for summary judgment on its statute of limitations defense as to any of the remaining plaintiffs.

**C. Release Agreements**

Curves submits with its motion for summary judgment copies of agreements for nineteen different plaintiffs that release all claims arising out of their Franchise Agreement or Agreements. (Burchfield Decl., Dkt. 41-1, Exs. C-1 to C-19). Curves argues that these release agreements bar the claims of all plaintiffs who signed them. Plaintiffs respond that the release agreements are unconscionable and should not be enforced. Plaintiffs also argue that the timing of some of the releases makes them inapplicable to the pending claims.

"A release of a claim or cause of action extinguishes the claim or cause of action." *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). "To effectively release a claim, the releasing instrument must 'mention' the claim to be released; . . . [a]ny claims not 'clearly within the subject matter' of the release are not discharged, even if those claims exist when the release is executed." *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (quoting *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex.1991)). "It is not necessary, however, for the parties to anticipate and identify every potential cause of action relating to the subject matter of the release." *Id.* (citing *Keck, Mahin & Cate v. National Union Fire Ins. Co.*, 20 S.W.3d 692, 698 (Tex. 2000). "Although releases often consider claims existing at the time of execution, a valid release may encompass unknown claims and damages that develop in the future." *Keck*, 20 S.W.3d at 698. "Like any other agreement, a release is subject to the rules of construction governing contracts." *Baty*, 63 S.W.3d at 848. General categorical releases, however, are narrowly construed. *Keck*, 20 S.W.3d at 698.

Plaintiffs argue that these release agreements are unconscionable, and should be found unenforceable by the Court. "Texas law renders unconscionable contracts unenforceable." *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010). "Texas further recognizes both substantive and procedural unconscionability." *In re Olshan Found. Repair Co., LLC, 328 S.W.3d 883,*

*892 (Tex. 2010)*. Procedural unconscionability "focuses on the facts surrounding the bargaining process," while substantive unconscionability concerns the fairness of the benefits of the agreement. *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 371 (Tex. App.—Houston [14th Dist.]2000, no pet.).

In determining whether a contract is procedurally unconscionable, the court "must examine (1) the 'entire atmosphere' in which the agreement was made; (2) the alternatives, if any, available to the parties at the time the contract was made; (3) the 'non-bargaining ability' of one party; (4) whether the contract was illegal or against public policy; and (5) whether the contract is oppressive or unreasonable." *Delfingen US-Texas, L.P. v. Valenzuela*, 407 S.W.3d 791, 798 (Tex. App.—El Paso 2013, no pet.). A contract is substantively unconscionably "if, 'given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract.'" *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). The grounds for substantive or procedural abuse "must be sufficiently shocking or gross to compel the court to intercede." *Id.*

"Whether a contract is contrary to public policy or unconscionable at the time it is formed is a question of law." *Id.* at 349. (citing *Hoover Slovacek LLP v. Walton,* 206 S.W.3d 557, 562 (Tex. 2006)). Because a district court "has no discretion to determine what the law is or apply the law incorrectly, its clear failure to properly analyze or apply the law of unconscionability constitutes an abuse of discretion." *Id.* (citing *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex. 1992)).

The releases attached by Curves to its motion for summary judgment evidence generally release all claims "arising out of or in any way connected with the [plaintiff's Franchise] Agreement," (Burchfield Decl. Ex. C-1, Ex. 41-1 at 59). Because each release agreement varies in important ways—including in the date it was signed and its exact scope—the Court will briefly consider and address both whether the release agreements encompass any of Plaintiffs' remaining claims and, if

so, whether Plaintiffs have raised an issue of material fact as to whether the release agreement is unconscionable.

   1.   *Women's Fitness of Wausau, Inc. Release Agreement*

Curves submits as evidence three release agreements entered into by Dolores and Christina Beidel on behalf of Women's Fitness Wausau, Inc. (Burchfield Decl. Ex. C-1, Dkt. 41-1 at 59–73). The first of these release agreements relates to a Wausau, Wisconsin location—which is still in operation (Fortman Decl., 42-2, at 7)—and is relevant to Count 3 of the Third Amended Complaint, (Burchfield Decl. Ex. C-1, Dkt. 41-1 at 59–60). The agreement was signed on July 8, 2009 and appears to generally release both parties "from any and all claims, demands or causes of action of whatsoever nature," (*id.* at 59), although the version submitted as summary judgment evidence is missing several pages. While the clause is quite broad, it does not expressly encompass future claims. (*See id.*). Construing the release narrowly, the Court concludes that it does not encompass any claims accruing after it was signed. Because the release agreement was signed in July of 2009, and Plaintiffs' claims are barred by the statute of limitations to the extent they accrued prior to May 31, 2011, (*see* Order, Oct. 15, 2015, Dkt. 18, at 11 & n.9), the release agreement does not legally preclude Women's Fitness Wausau, Inc. claim for breach of contract.

The second release agreement relates to a Marathon, Wisconsin franchise location, (Burchfield Decl. Ex. C-1, Dkt. 41-1, at 61–66), which is no longer at issue in this lawsuit pursuant to the stipulation of partial dismissal filed on July 5, 2016, which dismissed all counts related to that location, (Dkt. 44). Because the release agreement releases claims arising out of the Marathon Franchise Agreement and the operation of the Marathon franchise, (*see* Burchfield Decl. Ex. C-1, Dkt. 41-1, at 63 (releasing claims "arising out of or in any way connected with the Agreement or the offer and sale and/or development and operation of the Licensed Business"), it does not extend to claims related to other Women's World stores.

The third release agreement relates to a franchise located in "the Las Vegas, Nevada-Enterprise East area." (Burchfield Decl. Ex. C-1, Dkt. 41-1, at 67–73), Curves appears to suggest that this waiver is related to Count 6, for Women's Fitness of Wasau, Inc.'s Boulder City location, which operated until May 31, 2012, but Plaintiffs submit a declaration stating that this location had no release. (*See* Fortman Decl., 42-2, ¶ 5(a)). Women's Fitness of Wasau, Inc.'s did in fact have a Las Vegas location different from its Boulder City location, (*see* Order, Oct. 15, 2015, Dkt. 18, at 11), thus it is unclear to which location the release agreement refers. Even assuming it did pertain to the Boulder City location, however, the release agreement was signed October 21, 2005 and released any claims under a franchise agreement that the release agreement terminated, (*see* Burchfield Decl. Ex. C-1, Dkt. 41-1 at 67–73 ("Licensor and Licensee desire to terminate and cancel the Agreement, and both parties desire to release one another from all obligations under the Agreement.")). The release could not, therefore, encompass the claims currently at issue, which, again, must have accrued after May 31, 2011. The Court therefore denies Curves' summary judgment for Women's Fitness of Wasau, Inc.'s remaining claims, Counts 3 and 6, based on the release agreements.

2.   *Jackie Clary Release Agreement*

Curves submits a "General Release" agreed to by Jackie Clary, who bought a Curves franchise in January 2012 and signed the release on June 8, 2012 in order to relocate the franchise and save money on her lease. (*See* Fortman Decl., 42-2, ¶ 5(b)). DAR JAC, LLC, Jackie Clary's company, brings Count 22 in the complaint. (*See* Burchfield Decl., Dkt 41-1, ¶ 9). The release agreement states that the release is granted in exchange for Curves' decision to waive a $500 relocation fee. (*See* Burchfield Decl. Ex. C-2, Dkt. 41-1 at 74). Plaintiffs submit an affidavit stating, however, that Curves "would not allow Plaintiff Jackie Clary to move without signing a release." (*See* Fortman Decl., 42-2, ¶ 5(b)).

19

The terms of the release are expansive. First, the release agreement includes a general, categorical release:

> Licensee hereby unconditionally and absolutely releases and forever discharges CURVES INTERNATIONAL, INC., a Texas corporation . . . from and against any and all claims, actions, causes of action, demands, damages, costs, suits, debts, covenants, controversies, attorney's fees and other charges, whether known or unknown. liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal or equitable, which Licensee has, has had or may have, which relate to or arise out of any and all franchise relationships; any agreement of any kind or type to specifically include but not be limited to any and all franchise agreements; any offer and sale of any franchise; and/or, any development and operation of any franchise, whether open or closed, with the Released Parties.

(*See* Burchfield Decl. Ex. C-2, Dkt. 41-1 at 74). Second, the release agreement includes an even broader assignment provision:

> Any claims, causes of action, liabilities, obligations, or damages of every kind, of whatever nature, whether known or unknown, **accrued or which may ever accrue**, whether based on contract, tort or statute, arising from or in any way related to Licensor and/or, any franchise relationship; any agreement of any kind or type; any offer and sale of any franchise; and/or, any development and operation of any franchise with the Released Parties which are not released as a result of this General Release are hereby assigned to the Released Parties by Licensee Parties.

(*See* Burchfield Decl. Ex. C-2, Dkt. 41-1 at 74 (emphasis added)). Reviewing the plain language of these clauses, the initial release, which is construed narrowly, releases any claims related to any franchise agreement, franchise relationship, or sale or operation of a franchise, that Clary or her company, DAR JAC, LLC, had as of June 8, 2012,[7] and any damages that accrued stemming from such claims into the future. The assignment provision then assigns to Curves any claims, liabilities, or obligations Clary or her company may "ever" have that are "in any way related" to Curves. (*See* Burchfield Decl. Ex. C-2, Dkt. 41-1 at 74).

Plaintiffs appear to argue that the release agreement is unconscionable because these provisions are unreasonably favorable to Curves. The Court disagrees with respect to the release

---

[7] While the agreement releases any claims Clary "has, has had, or may have," the Court construes this term narrowly to encompass claims that Clary "possesses, has possessed, or possibly possesses," but not future claims. This is consistent with the plain meaning of the words in the release agreement. *Definition of Have*, Merriam-Webster (2017), https://www.merriam-webster.com/dictionary/have ("to hold or maintain as a possession, privilege, or entitlement").

provision. While it is broad and categorical, the release is provided expressly in exchange for a fee waiver. (*Id.* ("In exchange and in consideration for the release . . . [Curves] has waived the relocation fee in the amount of Five Hundred Dollars ($500.00))). While Plaintiffs may argue this bargain was unfair, or that the agreement was actually entered only so that Clary could move her store, neither of these bargains is obviously unreasonable—if Clary believed she had no claim against Curves, for example, the agreements would be quite reasonable. Further, broad releases are regularly enforced by courts. *See, e.g.*, *Keck*, 20 S.W.3d at 698 (holding that a clause releasing "all demands, claims or causes of action of any kind whatsoever" was enforceable); *Baty*, 63 S.W.3d at 849 ("[C]ourts will construe broadly drafted releases to encompass a wide variety of claims."). The minimal evidence that Plaintiff submitted fails to raise a genuine issue as to whether an otherwise-acceptable release provision could be unconscionable.

The assignment provision within the release agreement is, however, a different consideration. While Plaintiffs argue that it is unenforceable due to its unconscionability, the Court concludes that it need not reach that issue because the provision is void as against public policy. "As a rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy." *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 664 (Tex. 2008) (quoting *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129 & n. 11 (Tex.2004)). Texas courts have repeatedly held that certain contractual provisions are against public policy and refused to enforce them. *Id.* at 665 n.20 (listing Texas cases identifying unenforceable contractual provisions). For example, in a recent case, the Texas Supreme Court held that pre-injury waivers of future contract liability may be void as against public policy. *Zachry Const. Corp. v. Port of Hous. Auth. of Harris Cty.*, 449 S.W.3d 98, 116–117 (Tex. 2014) (holding that a no-damage-for-delay provision in construction contract was void as against public policy where port authority could continuously delay the construction project with impunity).

As the Court previously noted, this release agreement was entered so that Ms. Clary could move her franchise from one location to another and continue operating her store. (*See* Fortman Decl., 42-2, ¶ 5(b)). Plaintiffs submit via affidavit (and Defendants do not contest) that "[i]t is undisputed that Plaintiff Jackie Clary continued to operate under a franchise agreement with Defendant after [the release agreement] was executed." (*Id.*). Through the assignment provision, however, Clary would effectively be waiving any claims she could ever have against Curves or third parties that related to Curves or the Curves franchise she was operating. This assignment is astoundingly broad—it encompasses claims ranging from Curves' intentional torts to any possible claims Clary might have against her employees, her landlord, and her customers. And by assigning claims to Curves, Clary is effectively waiving them. Further, to enforce the assignment provision would be to render the Franchise Agreement void because it assigns all of Clary's future claims *and* obligations related to Curves, to Curves—a particularly odd result given that the parties continued to operate under the Franchise Agreement, and presumably planned to do so when they entered the release agreement.

To allow such a provision to be enforceable is against public policy in two ways. First, such a broad assignment provision precludes the parties from ever effectively contracting again—running directly counter to Texas' broad protections for freedom to contract. *See Fairfield Ins. Co.*, 246 S.W.3d at 664 ("This Court has long recognized Texas' strong public policy in favor of preserving the freedom of contract."); *see also* Tex. Const. art. I, § 16 ("No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."). The Texas Supreme Court has explained that the "indispensable partner" of the freedom of contract is contract enforcement. *See Fairfield Ins. Co.*, 246 S.W.3d at 664. If the assignment provision were valid it would preclude Clary, her company, and Curves from enforcing the Franchise Agreement that they

continued to operate under or any other possible future agreement of any kind—completely limiting their freedom to contract with one another.

Second, many of the claims Clary effectively waives, such as those for intentional conduct, recklessness, or gross negligence, may not be waived under Texas law. *See, e.g., Zachry Const. Corp.*, 449 S.W.3d 98, 116 (holding that pre-injury waivers of future contract liability "for harm caused intentionally or recklessly [are] unenforceable on grounds of public policy"). While it is currently unclear whether these sorts of claims are at issue, it is certainly plausible that they may be based on the allegations in the complaint. This sort of waiver "incentivize[s] wrongful conduct and damage[s] contractual relations." *Id*. Thus, the Court concludes that the assignment provision, which assigns, "[a]ny claims, causes of action, liabilities, obligations, or damages of every kind, of whatever nature, whether known or unknown, accrued or which may ever accrue, whether based on contract, tort or statute, arising from or in any way related to [Curves]," is void as against public policy. (Burchfield Decl. Ex. C-2, Dkt. 41-1 at 74). The Court concludes that this provision is severable from the rest of the release agreement because it was only part of the reciprocal promises in the agreement, and did not constitute the main purpose of the agreement, the release. *See In re Poly-Am., L.P.*, 262 S.W.3d at 360 ("We have previously allowed severance of illegal contract provisions where the invalid provisions were 'only a part of the many reciprocal promises in the agreement' and 'did not constitute the main or essential purpose of the agreement.'").

Given this conclusion, the Court finds that Clary and her company effectively released all claims that accrued on or before June 8, 2012. To the extent claims in Count 22 accrued after that date, however, Curves' motion for summary judgment is denied.

3.  *Teresa Collier Release Agreement*

Curves submits two release agreements signed by Teresa Collier: one related to her Spartanburg, South Carolina location and signed on November 5, 2009, and one related to her

Duncan, South Carolina location and signed on May 4, 2010. (*See* Burchfield Decl. Ex. C-3, Dkt. 41-1 at 75–86). Both of these agreements provide:

> Licensee, his/her heirs, executors, representatives, successors and assigns do hereby fully release and forever discharge Licensor . . . of and from any and all causes of action, liability, damages and claims whatsoever, known or unknown, direct or indirect, including without limitation those arising out of or in any way connected with the Agreement or the offer and sale and/or development and operation of the Licensed Business, which Licensee might or could have against Licensor, and Licensee does hereby indemnify and agree to hold Licensor harmless from any such claims, rights, or causes of action.

(*See id.* at 76, 82). Because these releases were entered in 2009 and 2010, and they do not expressly encompass future claims, the releases could not encompass the claims currently at issue, which must have accrued after May 31, 2011. The Court therefore denies Curves summary judgment on Counts 23 and 24 based on the release agreements signed by Teresa Collier.

4. *Clesta Ruth Vassar Collins and Roger Dale Collins Release Agreement*

Curves submitted two release agreements signed by Clesta and Roger Collins related to their Borger, Texas franchise location and Count 25 of the amended complaint. (*See* Burchfield Decl. Ex. C-4, Dkt. 41-1 at 87–99). The first agreement was signed on August 7, 2009, and the second was signed on January 30, 2013. (*Id.* at 92). The Collins' franchise location closed January 28, 2013—two days before the second release agreement was signed. (Fortman Decl., Dkt. 42-2 at 7). Because of its timing, only the second release agreement is at issue here. The release provision in the agreement provides:

> Licensee, his/her heirs, executors, representatives, successors and assigns do hereby fully, unconditionally and absolutely release and forever discharge Licensor . . . from and against any and all claims, actions, causes of action, liabilities, tort claims, good faith and fair dealing claims, distributor claims, demands, damages, costs, suits, debts, covenants, controversies, attorneys' fees and other charges, **accrued or which may ever accrue**, whether based in contract or tort, whether known or unknown, liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal or equitable, which the Licensee has, have had or may have, which relate to or arise out of any and all franchise relationships, whether open or closed; any agreement of any kind or type to specifically include but not be limited to any and all franchise agreements; any offer and sale of any franchise; and/or, any development and

> operation of any franchise, whether open or closed, with the Licensor. Any claims,
> causes of action, liabilities, obligations, tort claims, or damages of any and every kind,
> of whatever nature, whether known or unknown, **accrued or which may ever
> accrue**, whether based on contract, tort or statute, arising from or in any way related
> to Licensee and/or any and all franchise relationships; any agreement of any kind or
> type; any offer and sale of any franchise; and/or, any development and operation of
> any franchise with Licensor which are not released as a result of this Termination
> Agreement are hereby assigned to the Licensor by Licensee.

(*See* Burchfield Decl. Ex. C-4, Dkt. 41-1 at 95 (emphasis added)). This release and assignment

purports to broadly cover any and all future claims arising out of any relationship with Curves. For

the same reasons the Court previously concluded that an assignment provision related to any and all

future claims and obligations was void for public policy, *see supra* Part III.C.2, the Court concludes

that both the release and assignment are against public policy and void to the extent they relate to

future claims. Because the release agreement was signed after the Collins' franchise closed—and

after their claims could have accrued—however, whether it is enforceable against future claims is

irrelevant to the claims at issue. *See Philadelphia Indem. Ins. Co. v. White*, 490 S.W.3d 468, 490–91 (Tex.

2016) ("Unless an agreement cannot be performed without violating the law or public policy, the

party seeking to avoid enforcement must establish its invalidity under the particular circumstances.")

To the extent that Plaintiffs would argue these provisions are otherwise unconscionable, they

submitted no evidence regarding how these agreements were made, what alternatives the plaintiffs

had to signing the releases, and what ability the plaintiffs may have had to bargain for different

terms. And notably, Curves also agreed to a broad release within the agreement, with some

qualifications. (*See id.* at 94–95). Based on this lack of evidence and the general enforceability of

broad release agreements, the Court cannot refuse to grant summary judgment due to

unconscionability with respect to claims that existed at the time the release agreement was signed.

Because the Collins' signed the second agreement after they ceased to operate their Curves

franchise, their claims could not have accrued after the release agreement was signed. The Court

therefore grants summary judgment to Curves with respect to the breach of contract claims of Clesta and Richard Collins and Count 25 of the amended complaint.

5.    *Denise and Alan Cooke Release Agreement*

Curves submits one release agreement signed by Denise and Alan Cooke related to their BeStrong, LLC franchise location in Missouri and Count 27 of the amended complaint. (*See* Burchfield Decl. Ex. C-5, Dkt. 41-1 at 100–105). The release agreement was entered March 30, 2011. (*Id.* at 105). The release agreement provides that "Licensee . . .fully release[s] and forever discharge[s] Licensor . . . from  any and all causes of action, liability, damages and claims whatsoever, known or unknown, direct or indirect." (*Id.* at 101). This release does not expressly encompass future claims, and therefore could not encompass the claims currently at issue, which must have accrued after May 31, 2011. Plaintiffs claims that it is "undisputed that [the Cookes] continued to operate under a franchise agreement with [Curves]" after that date. (Fortman Decl, Dkt. 42-2, at ¶ 5(e)). The Court therefore denies Curves summary judgment on Count 27 based on the release agreement signed by Denise and Alan Cooke.

6.  *Jo Lynn Nelson and Carol Lee Coy Release Agreement*

Curves submits what appears to be two copies of one release agreement entered by Jo Lynn Nelson and Carol Lee Coy related to one of their two Lee Lynn Lifestyle, LLC franchise locations. (*See* Burchfield Decl. Ex. C-6, Dkt. 41-1 at 106–118).[8] The release agreement was entered January 19, 2015 and relates to their Taylorsville, Utah location (and Count 30 of the complaint). (*Id.* at 106, 111). The release agreement was signed the same day—January 19, 2015—that the Taylorsville location closed. (Fortman Decl., Dkt. 42-2 at 7). Nelson and Coy's other location in Murray, Utah closed December 31, 2015. (*Id.*).

---

[8] Both agreements include the same dates, signatures, and apply to the same franchise location. (*See* Burchfield Decl. Ex. C-5, Dkt. 41-1 at 106–118).

The release provision in the agreement provides broad release and assignment provisions, the same or similar to the ones previously discussed by the Court in Part III.C.4. (*See Id.* at 108 ("Licensee . . . fully, unconditionally and absolutely release[s] and forever discharge[s] Licensor . . . from and against any and all claims, actions, causes of action, liabilities . . . accrued or which may ever accrue . . . which the Licensee has, have had or may have, which relate to or arise out of any and all franchise relationships.")).

Attached to that agreement is a signed letter from Curves' Contract Manager, Cathy Pearson, to Jo Lynn and Carol, also dated January 19, 2015. (*See* Burchfield Decl. Ex. C-6, Dkt. 41-1 at 112). It was sent via email, and attached the signed release agreement. (*Id.*). It explains:

> For clarity, Section 4 (Mutual Releases) and Section 5 (Non-Compete) of the Release are specific to the geographic area described in Exhibit A of the terminated franchise agreement as the Taylorsville, Utah area. The Release excludes any other activities concerning Curves' franchises operating under license and does not apply to your current ownership of Curves' Franchise #122191 in the geographic area described as the Murray, Utah area.

(*Id.*). Despite this clarification, and without explanation, Curves claims in the declaration attached as evidence to its motion that the release encompasses Count 29 for the Murray, Utah franchise location. (*See* Burchfield Decl., 41-1, ¶ 9).

As an initial matter, the Court concludes that the release provision of this agreement effectively releases all claims for the Taylorsville, Utah franchise location and Count 30 of the amended complaint, and grants Curves' motion for summary judgment on that Count. The release was signed the same day the Taylorsville franchise location closed, after which Plaintiffs' claims could not have accrued, and Plaintiffs have submitted no evidence of unconscionability.

Turning to the issue of whether the release agreement also encompasses the Murray, Utah franchise, the Court will review the language of the provision in light of the language of the release agreement as a whole. *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004) ("Under Texas law, the

interpretation of an unambiguous contract is a question of law for the court to decide by 'looking at the contract as a whole in light of the circumstances present when the contract was entered.'").

The release agreement signed by Nelson and Coy is entitled "Termination of License Agreement and Mutual Release." (*See* Burchfield Decl. Ex. C-6, Dkt. 41-1 at 106). Near the beginning of the agreement, it provides:

> WHEREAS, Licensor and Licensee entered into a license agreement dated as of August 30, 2011 (the "Agreement") pursuant to which Licensor granted Licensee a license to use Licensor's trademarks, related processes and equipment in the operation of a thirty minute fitness and weight-center and for a geographic area described in Exhibit A as the Taylorsville, Utah area (the "Licensed Business"); and WHEREAS, on the terms set forth below, Licensor and Licensee desire to terminate and cancel the Agreement, and both parties desire to release one another from all obligations under the Agreement, except as hereinafter specifically reserved, and release one another of and from any and all claims, demands or causes of action as set out herein.

(*Id.*). Given this introduction, which explains that the release agreement was entered to terminate the parties' relationship with respect to the Taylorsville franchise, the fact that the Murray, Utah location is not anywhere mentioned in the release agreement, (*see id.* At 106-111), and the principle that broad categorical releases are to be read narrowly, the Court concludes that the release agreement does not encompass claims related to the Murray, Utah franchise location. Although the agreement releases claims arising out of "any and all franchise relationships, whether open or closed; [and] and any agreement [including] any and all franchise agreements, whether open or closed," these may be read to encompass any relationship or any agreement related to the Taylorsville franchise, particularly because franchise locations often had to renew their franchise agreements, effectively entering new ones, over time. (*See* Burchfield Decl. Ex. A, Dkt. 41-1, at § 2(A) ("The term of this Agreement shall be for a period of five (5) years from the date of this Agreement . . . Upon the expiration of the Term of this Agreement, Curves shall have the sole right to renew this Agreement for an additional period of five (5) years . . . however, Franchisee shall be

required to execute a new franchise agreement in the form then being used by Curves.")).

This reading is consistent with the letter sent by Curves to Nelson and Coy that clarified that

the release agreement was not intended to encompass the Murray, Utah franchise. (*See*

Burchfield Decl. Ex. C-6, Dkt. 41-1 at 106). The Court therefore denies Curves' motion for

summary judgment with respect to that location and Count 29 of the amended complaint.

7. *Denise Edmiston Release Agreement*

Curves submits one release agreement signed by Denise May Edmiston, related to her

Idyllwild, California franchise and Count 32 of the amended complaint. (*See* Burchfield Decl., Ex.C-

7, 41-1 at 119–124). The release agreement was entered on December 13, 2010. (*Id.* at 124). It

provides that "Licensee . . . fully release[s] and forever discharge[s] Licensor . . . from  any and all

causes of action, liability, damages and claims whatsoever, known or unknown, direct or indirect."

(*Id.* at 120). This release does not expressly encompass future claims, and therefore could not

encompass the claims currently at issue, which must have accrued after May 31, 2011. The Court

therefore denies Curves summary judgment on Count 32 of the complaint and for the breach of

contract claim of Denise Edmiston.

8. *Matthew Ford &Kristen Stoddard Release Agreement*

Curves submits one release agreement signed by Kristen Lee Stoddard and Matthew Allen

Ford related to their franchise and Count 37 of the complaint. (*See* Burchfield Decl., Ex.C-8, 41-1 at

125). The release agreement was entered December 5, 2011. (*Id.*) Plaintiffs continued to operate

their franchise location until March 31, 2015. (Fortman Decl, Dkt. 42-2, at 7).

The release agreement provides that in exchange for the waiver of a $500 relocation fee,

plaintiffs broadly waive all their claims against Curves and assign "[a]ny claims, causes of action,

liabilities, obligations, or damages of every kind, of whatever nature, whether known or unknown,

accrued or which may ever accrue, whether based on contract, tort or statute, arising from or in any

way related to [Curves]." (*See* Burchfield Decl., Ex.C-8, 41-1 at 125). This agreement is the same (or nearly the same) as the one the Court already reviewed and found to contain language that was void as against public policy, *see supra* Part III.C.2. For largely the reasons previously stated, the Court finds that the release provision of the agreement is enforceable, but the assignment provision is not. Thus the Court finds that Stoddard and Ford effectively released all claims that accrued on or before December 6, 2011. To the extent claims in Count 37 accrued after that date, however, Curves' motion for summary judgment is denied.

9. *Cathy Frost Release Agreement*

Curves submits four release agreements signed by Cathy Frost related to an East Hartford Connecticut franchise, a New London, Connecticut, franchise, a Natick Massachusetts franchise, and a Needham Massachusetts franchise. (*See* Burchfield Decl., Ex.C-9, 41-1 at 126–149). For the same reasons the Court previously discussed in Part III.C.6, the Court concludes that each of these agreements releases and assigns solely those claims arising out of the franchise location to which it relates. The amended complaint includes no claims with respect to the East Hartford and New London franchise locations, so those release agreements are irrelevant to the claims in this lawsuit. The amended complaint does include claims related to Frost's Norwich, Needham, and Natick locations, but the claims by the Natick location, Count 41, have been dismissed. (Dkt. 44). No release was submitted related to the Norwich franchise location, thus Curves' motion for summary judgment with respect to the Norwich location, Count 39, is denied.

The Needham release was entered August 19, 2013. (*Id.* at 143–149). The Needham store closed the next day, on August 20, 2013. (Fortman Decl, Dkt. 42-2, at 7). The language of the release agreement is sufficiently broad to encompass the claims for breach of contract at issue here.[9]

---

[9] While the release agreement purports to release future claims, because such claims are not at issue with respect to the Needham store, the Court need not consider the validity of such release. *See Philadelphia Indem. Ins.*, 490 S.W.3d at 490–91

Further, Plaintiffs have provided no evidence of unconscionability. The Court therefore finds that there can be no genuine dispute as to whether any of the claims for breach of contract related to the Needham store accrued on the last day of its operation, and thus grants Curves' motion for summary judgment with respect to Count 40.

    10. *James Gasson Release Agreement*

Curves submits one release agreement signed by James Gasson related to his Annandale-Springfield Virginia franchise and Count 43 of the complaint. (*See* Burchfield Decl., Ex.C-10, 41-1 at 150). The release does not encompass claims arising out of his other two franchises (which form the basis of Counts 42 and 44 of the complaint) or future claims. (*Id.* at 150–155). Further, it was signed in 2009. (*Id.* at 155). The release could not, therefore, encompass the claims currently at issue, which must have accrued after May 31, 2011. The Court therefore denies Curves summary judgment on Counts 42, 43, and 44 of the complaint and for the breach of contract claims related to James Gasson and his franchises.

    11. *Laura Johnson and Julianne Dugan Release Agreement*

Curves submits two release agreements signed by Laura Johnson and Julianna Dugan related to their Talleyville, Delaware franchise location. (*See* Burchfield Decl., Ex.C-11, 41-1 at 156–157). The first was signed in exchange to move the Talleyville store on December 9, 2011; the second was signed in order to amend the territory name for the same store on May 24, 2012. (*Id.*; Fortman Decl, Dkt. 42-2, at 7). Johnson and Dugan also have a Wilmington, Delaware franchise locations, however, and Curves submits the two releases as summary judgment evidence for both locations and both claims, Counts 49 and 50. The Talleyville store remains operating; the Wilmington, store closed in 2014. (Fortman Decl, Dkt. 42-2, at 7).

---

("Unless an agreement cannot be performed without violating the law or public policy, the party seeking to avoid enforcement must establish its invalidity under the particular circumstances.").

First, the Court concludes that, unlike with some of the other release agreements that Curves submitted as summary judgment evidence, these agreements encompass all claims by Jordan and Dugan. The release agreements broadly release all claims "aris[ing] out of any and all franchise relationships; any agreement of any kind or type to specifically include but not be limited to any and all franchise agreements." (*See* Burchfield Decl., Ex.C-11, 41-1 at 156). Unlike the agreement discussed in Part III.C.6, both of these agreements are entitled "General Release," and neither includes an introductory clause suggesting the agreement pertains to a particular franchise or location. (*See id.* at 156–157). In fact, Johnson and Dugan's first release agreement does not even mention the Talleyville franchise location or franchise agreement. (*Id.* at 156). Although the second release agreement does state that the franchisees' claims are released in exchange for Curves' agreement to rename the Talleyville, Delaware territory, it does so near the end of the short agreement and after the broad and categorical release provision. (*Id.*).

Turning to the general scope of the agreements, both agreements contain the same or nearly the same broad assignment provision the Court has already determined is void as against public policy in Part III.C.2. It concludes, however, that the release provisions are sufficiently broad to encompass the contract claims at issue here, and in light of the absence of evidence regarding unconscionability, that they are valid and enforceable. These agreements therefore release all claims which accrued prior to May 24, 2012 with respect to Counts 49 and Count 50. Curves' motion for summary judgment is denied, however, to the extent claims related to Count 49 or 50 claims may have accrued after May 24, 2012.

12. *Ruth Kieffer Release Agreement*

Curves submits one release agreement signed by Ruth Kieffer, related to her Grand Chute, Wisconsin franchise location and Count 53 in the amended complaint. (*See* Burchfield Decl., Ex.C-12, 41-1 at 158–163). The release agreement does not extend to future claims and was signed in

2009, (*id.* at 165–66, 168), thus it cannot encompass the claims at issue, which must have accrued after May 31, 2011. The Court therefore denies Curves' motion for summary judgment with respect to Count 53 of the complaint.

### 13. *Anna Ogle Release Agreement*

Curves submits one release agreement signed by Anna B. Ogle, related to her El Paso, Texas franchise and Count 63 of the amended complaint. (*See* Burchfield Decl., Ex.C-13, 41-1 at 164). Ogle signed the release on May 1, 2013, in exchange for Curves' agreement to waive a five hundred dollar relocation fee. (*Id.*). Plaintiffs claim, and Defendants do not dispute, that "Plaintiff Anna Ogle never relocated," (Fortman Decl, Dkt. 42-2, ¶ 5(k)), however, there is no evidence that Curves breached the agreement, or that the release agreement was not entered so that Ogle could relocate. Ogle's franchise closed approximately eight months after she signed the release agreement, on December 31, 2013. (Fortman Decl, Dkt. 42-2, at 7).

The "General Release" agreement entered by Ogle contains the same or very similar release and assignment provisions as those the Court previously discussed in Part III.C.2. For the same reasons discussed there, the Court finds that the assignment provision is void as against public policy. Further, it concludes that the release provision is enforceable and that there is no evidence of unconscionability. Thus, any of Ogle's claims that accrued prior to May 1, 2013 are therefore released by the agreement. To the extent Ogle's claims and Count 63 of the amended complaint accrued after May 1, 2013, however, the Court denies Curves' motion for summary judgment.

### 14. *Catherine Pieratt Release Agreement*

Curves submits one release agreement signed by Catherine Pieratt on behalf of Fitness Queens, LLC, related to its North Vernon, Indiana franchise location and Count 65 of the amended complaint. (*See* Burchfield Decl., Ex.C-14, 41-1 at 165-168). The release was signed September 30, 2013, (*id.* at 168), the same day the North Vernon franchise closed, (Fortman Decl, Dkt. 42-2, at 7).

The release agreement is sufficiently broad to encompass the breach of contract claims at issue here, and there is no evidence of unconscionability. Because there can be no genuine dispute that the claims in Count 65 accrued before the franchise location closed on September 20, 2013, the Court grants Curves' motion for summary judgment with respect to those claims.

    15. *Shellene Ragan Release Agreement*

    Curves submits two release agreements signed by Shellene Ragan on Behalf of Keeping You Fit, Inc., which had three franchise locations in North Dakota. (*See* Burchfield Decl., Ex.C-15, 41-1 at 169–182). The first agreement was signed on September 1, 2011 and related to the North Fargo franchise location; the second signed on February 23, 2012 and related to the West Fargo franchise location. (*Id.* at 169; Fortman Decl, Dkt. 42-2, at 7). Both the North Fargo and West Fargo franchise locations ceased operations in 2011, prior to the dates that their respective release agreements were entered. (Fortman Decl, Dkt. 42-2, at 7). The third franchise location, in South Fargo, closed in 2015. (*Id.*).

    First, the Court concludes that, like the release agreements discussed in Part III.C.6, and for largely the same reasons, the release agreements signed by Ragan release claims only for the single franchise location they pertain to. (*See* Burchfield Decl., Ex.C-15, 41-1 at 169 ("WHEREAS, Licensor and Licensee entered into a license agreement dated as of October 26,2010, (the 'Agreement') . . . related processes and equipment in the operation of a thirty minute fitness and weight-center and for a geographic area described in Exhibit A as the Fargo. North Dakota-North area (the 'Licensed Business'); and WHEREAS . . . Licensor and Licensee desire to terminate and cancel the Agreement, and both parties desire to release one another from all obligations under the Agreement . . . .")). The Court therefore denied Curves' motion for summary judgment with respect to the South Fargo franchise location and Count 71 of the amended complaint.

Turning to the general scope of the release agreements, both release agreements encompass the claims at issue here for breach of contract, and Plaintiffs have provided no evidence of unconscionability. The Court therefore finds that there can be no genuine dispute as to whether any of the claims for breach of contract related to the North Fargo and West Fargo franchise locations accrued prior to the dates of their respective release agreements, and therefore grants Curves' motion for summary judgment with respect to Counts 69 and 70 of the amended complaint.

16. *Gradyne Faw Rose Release Agreement*

Curves submits one release agreement signed by Gradene Faw Rose on behalf of Faw-Rose Fitness, LLC, related to her East Wilkesboro franchise location and Count 76 of the amended complaint. (*See* Burchfield Decl., Ex.C-16, 41-1 at 183–189). The release agreement was entered on August 24, 2011. (*Id.* at 189). Rose's East Wilkesboro franchise location closed in July 2014. (Fortman Decl, Dkt. 42-2, at 7). Rose had another location in West Wilkesboro for which Curves did not submit a release agreement; that franchise location closed in June 2011. (*Id.*).

The Court concludes that, like the release agreements discussed in Part III.C.6, and for largely the same reasons, the release agreement signed by Rose releases claims only for the East Wilkesboro location, and not for the West Wilkesboro location. (*See* Burchfield Decl., Ex.C-16, 41-1 at 183-189). The Court therefore denied Curves' motion for summary judgment for Count 75 and the West Wilkesboro store.

Turning to the release and assignment provision signed by Rose for the East Wilkesboro location, the agreement includes the same or similar language to the language prviosuly discussed by the Court in Part C.III.4. For the same reasons the Court previously discussed, the Court concludes that both the release and assignment are against public policy and void to the extent they relate to future claims. It concludes, however, that the release agreements are otherwise enforceable against

35

claims related to either of the franchises that had accrued at the time the release agreements were entered.

The Court therefore concludes that the agreement releases all claims that accrued prior to August 24, 2011 with respect to the East Wilkesboro location. To the extent any claims with respect to Count 76 and the East Wilkesboro location accrued after that date, however, the Court denies Curves' motion for summary judgment.

### 17. *Joy Samson Release Agreement*

Curves submits three release agreements entered by Joy Samson related to her Lexington, Massachusetts franchise location and Count 80 of the amended complaint. (*See* Burchfield Decl., Ex.C-17, 41-1 at 190–203). The latest of these agreements was signed on June 11, 2013. (*Id.* at 193). The franchise continued to operate until June 11, 2015. (Fortman Decl, Dkt. 42-2, at 7).

The release agreement broadly releases all claims arising out of the agreement, but not future claims. The Court therefore concludes that to the extent claims in Count 80 of the complaint accrued prior to June 11, 2013, they are released. To the extent that claims in Count 80 accrued after that date, however, Curves' motion for summary judgment is denied.

### 18. *Stacy Vano Release Agreement*

Curves submits one release agreement signed by Stacy Vano related to her Levittown, New York franchise location and Count 87 in the amended complaint. (*See* Burchfield Decl., Ex.C-18, 41-1 at 204–207). The release agreement was signed on January 31, 2013. (*Id.* at 207). The franchise continued to operate until August 15, 2014. (Fortman Decl, Dkt. 42-2, at 7).

The release agreement broadly releases all claims arising out of the agreement, but not future claims. The Court therefore concludes that to the extent claims in Count 87 of the complaint accrued prior to January 31, 2013, they are released. To the extent that claims in Count 87 accrued after that date, however, Curves' motion for summary judgment is denied.

19. *Rita and John Viskup Release Agreement*

Curves submits one release agreement signed by Rita and John Viskup related to their Princeton, West Virginia franchise locations and Count 91 of the amended complaint. (*See* Burchfield Decl., Ex.C-19, 41-1 at 208-215). That store closed on January 31, 2014, (Fortman Decl, Dkt. 42-2, at 7), and the release agreement was signed on March 17, 2014, (Burchfield Decl., Ex.C-19, 41-1 at 215). The agreement encompasses the claims at issue here for breach of contract, and Plaintiffs have provided no evidence of unconscionability: the Court therefore grants Curves' motion for summary judgment with respect to Count 91 of the amended complaint.

Curves also moved for summary judgment with respect to the Viskup's other franchise location, in Bluefield, Virginia, and Count 90 of the amended complaint. For the same reasons previously discussed in Part III.C.6, the Court concludes, however, that the release agreement does not encompass claims for the Bluefield franchise location. This reading is consistent with a letter submitted by Curves as evidence that was sent to the Viskups from Curves the same day they signed the Princeton, West Virginia release agreement. It states:

> I have enclosed an executed copy of the Termination of License Agreement and Mutual Release signed by you for a geographic area described as the Princeton, West Virginia area. This document places into effect the termination of the franchise agreement you signed with Curves International, Inc. as described in the document.

(Burchfield Decl., Ex.C-19, 41-1 at 208). The Court therefore denies Curves' motion for summary judgment with respect to Count 90 of the amended complaint.

### A.      Plaintiffs' Theory of Damages

Curves' final argument in favor of its motion for summary judgment is that Plaintiffs have no evidence of any recoverable damages during the limitations period. (Def.'s Mot. Summ. J., Dkt. 41, at 18). They argue that the only evidence Plaintiffs have regarding damages—regarding the losses or gains reported on their taxes during each year their franchises operated—does nothing to demonstrate a causal connection between those losses and the actions of Curves. (*Id.* at 18–20).

Plaintiffs respond that the losses reported in their tax returns were directly caused by Curves' breaches, and that the testimony of the company's founder, Gary Heavin, is sufficient to support their claim for damages. (Pls.' Resp., Dkt. 42, at 16–17).

Defendant notes that in Plaintiffs' initial disclosures, Plaintiffs indicated that they suffered damages both in the form of out-of-pocket losses and lost profits. (*See* Def.'s Mot. Summ. J., Dkt, 41, at 19). The Texas Supreme Court has stated that:

> Recovery for lost profits does not require that the loss be susceptible of exact calculation. However, the injured party must do more than show that they suffered some lost profits. The amount of the loss must be shown by competent evidence with reasonable certainty. What constitutes reasonably certain evidence of lost profits is a fact intensive determination. As a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained. Although supporting documentation may affect the weight of the evidence, it is not necessary to produce in court the documents supporting the opinions or estimates.

*ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 876 (Tex. 2010) (quoting *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex. 1992)). Here, Plaintiffs have objective evidence of their lost profits in the form of the losses they reported on their tax returns. (*See* Wittrock Decl. Ex. D, 41-2). Further, they have submitted the testimony of Gary Heavin, the founder of Curves, who suggests that a Curves franchisee can expect to make approximately $30,000 in profit a year in running a franchise. (Pls.' Resp. Ex. A, Dkt. 43-1, Heaven Dep.). The Court finds that this testimony, combined with the expert testimony regarding Plaintiffs' actual losses, is sufficient to create a fact issue as to whether Plaintiffs can demonstrate their amount of lost profits to a reasonable certainty. *See ERI Consulting Engineers*, 318 S.W.3d at 876 ("What constitutes reasonably certain evidence of lost profits is a fact intensive determination.").

In addition to the damages themselves, "a causal link to economic damages is a requisite element of an action for breach of contract." *Lewis v. Bank of Am. NA*, 343 F.3d 540, 545 (5th Cir. 2003) (applying Texas contract law). The record on summary judgment demonstrates sufficient

evidence from which a jury could infer causation. (*See, e.g.*, Wittrock Decl., Dkt. 41-2, Ex. B-22 ("Q. Did Curves' failures harm your business in any way? A. Yes"); Ex. B-23 "Q. Did these failures that you have identified harm your business in any way? A. Absolutely.")). The Court concludes that there is a genuine issue as to whether Plaintiffs can demonstrate the amount of loss profits caused by Curves' breaches to a reasonable certainty. Thus, the Court denies Curves' motion for summary judgment on the basis that Plaintiffs' lack evidence of damages.

## IV. CONCLUSION

In light of the foregoing, the Court hereby **GRANTS** in part and **DENIES** in part Defendant's Motion for Summary Judgment (Dkt. 41).

The Court **GRANTS** Defendant's Motion for Summary Judgment with respect to Counts 25, 30, 40, 65, 69, 70, and 91 of the Amended Complaint.

Further, the Court hereby **GRANTS** in part Defendant's Motion for Summary Judgment with respect to the following claims:

- Count 22, to the extent the claims accrued on or before June 8, 2012;

- Count 37, to the extent the claims accrued on or before December 6, 2011;

- Counts 49 and 50, to the extent the claims accrued on or before May 24, 2012;

- Count 63, to the extent the claims accrued on or before May 1, 2013;

- Count 76, to the extent the claims accrued on or before August 24, 2011;

- Count 80, to the extent the claims accrued on or before June 11, 2013;

- Count 87, to the extent the claims accrued on or before January 31, 2013.

The Court hereby **DENIES** Defendant's Motion for Summary Judgment as to all of Plaintiffs' remaining claims.[10]

---

[10] This denial does not encompass the claims previously dismissed by stipulation of the parties or Order of the Court.

Finally, the Court hereby **DENIES** Plaintiffs' Motion for a Continuance (Dkt. 54) and schedules a final pretrial conference in this case for Friday, March 24, 2017 at 11:00 AM in Courtroom #1, United States Courthouse, 800 Franklin Avenue, Waco, Texas.

       **SIGNED** on March 6, 2017.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE